calendar, which is number 21948, Holick v. Cellular Sales. Good morning. Good morning. May it please the court, Larry Carbo for the Appellant's Cellular Sales of Knoxville and Cellular Sales of New York, and I have reserved two minutes for rebuttal. Very good. The issue before the court is whether the district court abused its discretion in failing to take an appropriate reduction on the plaintiff's claimed attorney's fees based off the plaintiff's degree of success in the trial court. And I want to make clear that my argument today is not an argument, and the appellants are not arguing, proportionality. The argument today is based off the degree of success in the trial court. So Mr. Carbo, before you go any further, we received notice at the end of last week that a settlement has been reached and the district court has asked for an indicative ruling, or has given an indicative ruling and asked that the mandate be returned to the court so that he can enter an order approving the settlement. The settlement appears to provide relief to opt-in plaintiffs, which is something that wasn't really contemplated in the district court's adjudication of the attorney's fees motion. Could you tell me how you propose that we take into account or whether we should ignore this settlement, which clearly goes farther than the facts as they were presented to us? Sure. In the underlying case, the substance of the related appeal, there was an appeal of the class certification and decertification of the FLSA conditional prior certification. And so while that issue was not resolved at trial, that was part of the appeal that was resolved through a settlement through the Second Circuit's mediation process. So the opt-ins, while not part of the case, their claims were resolved as part of that pending appeal. I'm not quite sure how far, I guess it's all public record, but I'm not sure how far I can go with the appeal other than to state that the claims of the opt-ins were resolved along the lines of what the recovery was for the named plaintiffs in the trial, meaning that their recovery was a fraction of what had been sought ultimately in the trial court. So the opt-in plaintiffs get around the same amount? The opt-in plaintiffs, I see the total is $89,000. That's for 47 opt-in plaintiffs? That's correct. Does that include the roughly $11,000 awarded by the trial court to the named plaintiffs? So the total amount, including the named plaintiffs, was $89,000 was what the case was settled for. And that includes an additional $14,000 on top of the original $11,000, right, for the named plaintiffs? The $89,000 is everything, including the claim for the named plaintiffs. So the cellular sales will be paying $89,000 to resolve the entire claim, including the claims of the named plaintiffs. But I'm saying that for the named plaintiffs, the trial award was some $11,000. Correct. The settlement includes an additional $14,000. Correct. Correct? And then we have the opt-in plaintiffs. That is correct. So I'm having difficulty understanding how we can assess the level of success on the merits that the plaintiffs achieved without taking the settlement into account. You know, I struggled with that a bit with respect to whether or not settlement should be a factor for the court to consider in determining the award of attorney's fees. And I know that the settlement discussions that I had with you over the course of this litigation, at least in this jurisdiction, would not be relevant for the determination of the appropriate amount of attorney's fees. But to answer your question, I believe that that is a significant issue that weighs in favor of the substantial reduction in attorney's fees that we're asking for here when you look at the total amount of the... Doesn't that alter the calculus here or not? I don't believe so because of the way the case was settled. The case was settled with respect to just the underlying claim. Well, the class action was... They didn't get relief for the class action. Correct. And you raised that as part of the reason why the fees should be released. But then you settled with potential opt-in plaintiffs, right? We did. So because there's at least some acknowledgement that you had some potential liability on for a larger class of people. So how are we supposed to measure that? What are we supposed to do with that? It seems to me we ought to send it back to the district court and let the district court hear your arguments again and then send it back to us after we know what relationship the opt-in plaintiffs and the efforts of counsel and ultimately having you feel you needed to be in a position to settle. I mean, I'm not faulting you for that. I'm just trying to... You've given us an unsettled record now. And I'm not faulting you for it. I appreciate the fact that you took use of the mediation program and you settled it. But it kind of roils the waters for us. We don't know what to look at. There's something extra outside of the record that you want us to think about or they probably want us to think about. You just said you think it shouldn't be a little bit better clarified by going back to the district court? I don't think so. And I don't think that for purposes of the analysis of the district court with respect to the reductions that it already made. Then let me ask you, does it legitimize much of the efforts that they made originally with regard to their attempts to bring a class action? You settled? Well, candidly, no, I don't think so. Candidly, no? I don't think it gives credence to the claim. You settled because you didn't think you had any liability whatsoever? Well, we settled because we had an ongoing appeal and a case that had been going on for ten years and we were asked to mediate the case before the second court of appeals mediation process. Believe me, I appreciate all that, but I don't believe consumer cellulars in the business of compensating attorneys on claims that they think are worthless. You settled for a reason. Well, I think parties settle for a lot of reasons. Counsel, doesn't the settlement change your proportionality analysis that you said as soon as you went to the podium? The proportionality, I don't believe so. It doesn't change the fact that at the trial court, at every step of the way, with the one exception being the wage and hour overtime minimum wage claim, we were successful every stage of the way. And the fact that... But they were all intertwined, the court found. They were all intertwined, the court found, and couldn't separate the work associated with the successful claims. Isn't that correct? Well, that is... That's what the court found? The court found that he could not segregate the New York wage law claims from the wage and hour overtime and with respect to whether or not there should have been a more substantial reduction. And I see I'm out of time here, but if I could finish... Please answer, and then I have a follow-up question. Sure. And so the issue with respect to certification or decertification in the ultimate ruling with respect to denying conditional certification didn't weigh on the issue with respect to the district court's analysis as to whether or not the New York wage law claims should be and could be segregated. And in fact, the district court relied, we believe, on an erroneous statement of fact with respect to the contract and the contract that the claims relied upon, the contract that the plaintiffs were relying upon for purposes of their wage claim. And we went in great lengths in our brief to show that the contract claims and the wage claims, including the wage deduction, the off-the-clock work and the untimely commissions, were not any way related to the overtime and minimum wage claims. So my follow-up is just, as to proportionality, your argument as I understood it was that everyone acknowledges that it's not permitted in our circuit to look at just mere dollar amounts, what was asked for versus what was recovered versus how that lined up with attorney's fees. But I understood your claim to be more that the district court failed to take into account the fact that the defendants won on summary judgment as to three claims and that the relative proportion of success on substantive claims was overlooked. And you would say that that also has not changed by virtue of this settlement. Is that right, that this reflects unpaid minimum wage and overtime only for the opt-in plaintiffs and reflects a recalibration of the, you know, risk related to your appeal on the denial of class cert? But is that kind of right? I believe that's an accurate statement that the, you know, you have to walk a fine line when arguing the degree of success with, you know, I want to be clear that that's, as you're saying, that's not something that we're arguing there. It is simply the fact that the claims, and it happens to be the claims that had the most substantial value in the underlying case, the claims that accounted for almost, I believe, 98% of the claims that were made in the underlying case were the claims that were ultimately dismissed. 98% of the dollars related to, rather than, yeah. Yes, that's correct. Of course, we look at the substance of the claims also because the Congress and the state legislature wanted those claims vindicated, correct? That is correct. Okay, thank you. You have two minutes of rebuttal, so we'll hear your further thoughts at that point. Mr. Dunn. Thank you. Good morning, Your Honors. Good morning. Let me jump into your question. And when we came up to the circuit mediation program, we settled the claims based on the calculus of how successful we were going to be on appeal, and we would have loved to settle the attorney's fees part two, but defendants insisted that we couldn't. So much so that when we have to go back to the district court to get the district court to approve the settlement, which is happening right now, we're doing that, taking another haircut on that. We're not seeking attorney's fees for that work because it's unopposed, it's an unopposed seeking approval of that. And so, as part of the settlement, the deal of the settlement was, if they're going to insist that they have to go forward challenging this attorney's fees appeal, we couldn't charge to get the underlying settlement approved. So I held my nose and I agreed to that. It's all part of the record of what the settlement is. So now let's talk about what actually happened in this case. Wait a second. I want to understand, first of all, let me just say that I think we all, I won't speak for my colleagues, but I certainly appreciate the party's willingness to participate in the mediation program. This case has been going on for a very long time, it's been the subject of numerous appeals, and it's unfortunate that it didn't happen earlier, that you weren't able to reach a resolution. Spread three times. Nonetheless, the question for us, I think, in adjudicating this appeal of the attorney's fee award, and there's no cross appeal, I understand, but the appeal of the 40% reduction as being insufficient, and as not recognizing the limited success on the merits, is that, as Judge Wesley has pointed out, the fact that opt-in plaintiffs are now getting reimbursement or getting paid. That's right. That's good. I understand that. But my question is, doesn't that mean that we should remand this whole It affects the valuation of the amount of success on the merits that you have obtained, and why is that wrong? The reason it's wrong is because of the practicality of what the case was actually about. At every stage, the overwhelming work on the case, at every single stage, was about the misclassification of employees. The damages on all of these claims are very simple, easy to calculate. The discovery was minuscule. Minuscule, right? If you got a damaged claim about late payment of wages, you hit the payroll button and it prints. The discovery was minuscule. This litigation, at every stage, from the beginning to the end, has always been about misclassification. I actually didn't understand why the magistrate judge found that the misclassification issue couldn't have been decided class-wide. It should have been. The proof was class-wide. I have to say, I was shocked when Judge Mordew concluded that. Then we went back to the magistrate. We did a judge trial. The only issue with trial, the only issue was misclassification. It could have been decided class-wide, couldn't it have? It could have been decided- Oh, gosh, yes. Everything was the same. Everything was the same. We had exactly the same contract, exactly the same rules, exactly the same training, exactly, exactly, exactly. And that's your point, isn't it? Is that really the cornerstone issue here is the independent contract- Correct. Employee dispute. Correct. That kind of life is a gate. Correct. What I find curious is your resistance to the remand. Please don't make us do that. I don't understand your resistance because it would seem to me that makes your case better. It makes your case better for the attorney's fees award that you got. Because it certainly, there's some acknowledgement, it seems to me, it looks to me like some acknowledgement to some legitimacy. You didn't get an appeal from the 2015 to now, right? You didn't get an appeal when you lost the class action. Oh, I get an appeal. No, I mean, but on the appeal issue. I appealed it. That appeal, there's two appeals that the mediation program settled. The class action appeal- And the late wage claim appeal. The merits of that appeal were never decided. Correct, because we settled it. Because we settled it. So you settled it. Right. Clearly, my case is a good case. Mr. Dunn, how long has your- I'm sorry, Mr. Dunn. You just don't want to hear my question. Oh, I'm sorry. Excuse me, Judge. Well, it seems to me that it might benefit you if it went back to the district court, because showing that there's a connection between your success with regard to the opt-in, and that there might have been some merit to your 23B, which is why you gave it up, because Consumer Cellular was worried about a nationwide class action, as opposed to an action that was dealt in the Northern District of New York, that your reference then should be measured by that stick, as opposed to the fact that all you got was common wage claims with regard to the limited number of plaintiffs that you were left with after the class action. So now let me ask you, are you interested in a remand or not? I'm not afraid of the proportionality argument, Your Honor. Okay, fair enough. I'm not, because the case was about the independent contractor. Counsel, how long has this litigation been going on? 11 years. We've been to this court three times, okay? It must be over. The case has to be over. An alternative to a remand is simply affirming the last order of the district court on fees, correct? You're willing to take that amount? Absolutely. By the way, I cut my fees before I applied, okay? I cut my fees before I applied. So maybe you could address then, with regard to the merits of the district court's decision, whether the district court adequately took into account the fact that you achieved success on only the minimum wage and overtime claim. You dismissed the unjust enrichment claim and you lost, at summary judgment, on the unlawful deductions, uncompensated work, and untimely commissions. District court didn't really account for that. Actually, the district court did account for that. What they said was that the claim of the independent contractor claim is the gateway issue for all of those claims. And the amount of litigation spent on the late wage claim was infinitesimal compared to the amount of time spent on- How do we know the district court took into account properly the fact that you lost on those three substantive claims? You're saying that it didn't really matter because the ballgame was lost at the independent contractor versus employment determination? He addressed that. He does address it. He says, I'm balancing it, but the amount of time that was- The facts reveal all. We took a haircut before we even applied. So it's not a reduction of 40 percent. It's actually more of a reduction of 50 or 60 percent because we self-applied- He said you did not adequately remove claims that were associated with the application for class relief. Fair enough. Fair enough, but he did address and deal with the issue of the independent contractor issue overwhelmed the whole case and it was the gateway issue to every single claim, even the ones that we had summary judgment against this time. It's the gateway claim. That's why it's inextricably intertwined. So there was no more extra work because we were doing that gateway claim on this claim, or this claim, or this claim. It's the same work that applied to all of them. Even if you just sought payment as simple employees, what you ultimately got, you'd still have to litigate that initially. That's exactly right, and the defendant drove the bus on all of that discovery. Most of the stuff we could have stipulated to, but the defendant insisted, which is clearly their right. What's curious is there's no objection to your rates and no claim that the billings were padded in any way, shape, or form, which is what we often see and may see later in the week. So there's none of that. It's purely based upon whether these are entangled or not. We did it, we try to think of ourselves as a responsible law firm, and you can't really complain about our rates. So I want to come back to my question, though. In my review of the district court's opinion, in the discussion of the degree of success on the merits, the analysis is dominated by the failure to get collective status or class action status, because he then comes back to and says, defendants also assert a reduction is necessary because you weren't successful on certain claims. Beyond lawful wage deduction, untimely commissions, and compensable works. But these were intertwined, so I'm not going there. So he doesn't take, in my reading, he does not account for, I mean, he declines to, because he says they were intertwined. I'm not so sure I agree with that, Your Honor, because the case that he cites to, it's the case that San Diego Sales is citing to, the bar fuel case. I mean, there was a 50% reduction, which is about what happened in our case. So I don't know what everybody's complaining about. We did, from cellular sales, they drove the litigation as to why it is the number that it is. And now they're complaining about the consequences of their very, very aggressive defensive strategy. So I mean, at some point in time, you reap what you sow. They sowed a lot of discovery on this main central gatekeeper issue. It's consistent for all claims and all parties. So now we're here. All right, thank you very much. Thank you. Mr. Carbo, you have two minutes of rebuttal. Maybe you can start by responding to Mr. Dunn's point that you're entitled to be aggressive in the defense, obviously. But looking for tax returns for all the potential members of the collective class and so on. Was that really necessary to your defense that these were independent contractors as opposed to employees? Yes, that part of the discovery was certainly related to the- Could you speak more into the microphone, please? That part of the discovery was certainly related to the misclassification issue, but not the only issue for the reason for that discovery. And so I would take issue with Mr. Dunn's position that we drove the bus and heavily litigated that ultimate issue. Because I think the record shows that a significant amount of the discovery, a substantial amount of the discovery related to the more complicated claims with respect to the wage law claims. And I think the record shows that. But I would like to answer one issue that you raised with respect to the certification issue and the fact that the plaintiffs never got a chance to let that appeal play out and that ultimately it was resolved. In fact, the Second Circuit took a pass at that when after Judge Mordew denied the certification issue, the plaintiffs took a preliminary appeal on that and lost. And the appeal and the record on appeal for that was essentially the same as the record that was on appeal for the pending claims. And so the idea that there's no question that these were all same and that there's no question that these claims should have been certified or that the collective action should have been. But yet, as Judge Wesley asked you, you must have believed there was some liability remaining for the opt-in plaintiff, but you wouldn't have given them $90,000. I mean, could I say that there's never any risk of liability? I don't think I've ever taken a case that says there's no risk of liability. But I just go back to what I said before with respect to parties settle claims for a lot of reasons. And one is the fact that we've been here four times and this case has been going on for 11 years. How many times were you here? Three? I think it might be four. You were the appellant at three of them, weren't you? We were the- The arbitration clause that Judge Carney and I sat on. Yes, I believe that's right. I believe that's right. We were the appellant in three, and then the one on the decertification issue, obviously the appellee. So obviously this case was extremely important to you because if you lost it nationwide, you were going to have a problem because this is the way you set up all of your individual relationships. I mean, every time you took somebody on, they had to form an LLC or something. because I mean, that's what you wanted. You wanted an independent contractor relationship. Right. Ultimately, you failed on that in New York, correct? Well, we failed on that in New York with respect to seven individuals. But again- Excuse me, with all due respect, you also then decided to settle with regard to the opt-ins, right? We certainly did that, and also- Class action. Well, I guess if I had to- I'm just trying to understand how this isn't related some way. The wage claims and the class action, how it's not related. And I don't understand why you would settle. I mean, it seems to me compelling that the district court ought to think about this. But that's all right. Yeah, I mean, if I can answer your question, it was not a nationwide class action. In fact, there were- I didn't say it was a nationwide class action. I said it might have a nationwide implication to you. Since collateral estoppel issue preclusion could be used against you if you lost, offensive collateral estoppel could be used against you with regard to the relationship between you and your individual distributors, correct? It's hard for me to say that other than to say that that's not correct. But that's because of many other things that were resolved along the way, Your Honor. And the reason why, again, why this one, I believe, was not resolved early on and led to what Mr. Dunn describes as an aggressive defense, was the fact that we were defending a $4.5 million claim as opposed to what was realistically at best an overtime and wage claim, which at the end of the day, turns out to be a claim that was settled for $89,000 as opposed to- I'm not arguing proportionality. I'll argue it's not proportionality. It's a degree of success. I have one further question. I have the impression, but I may be misremembering, that your client has since restructured its relationships with sales associates. Is that right? Yes, actually before this lawsuit was filed. Before the lawsuit was filed? As of January 1st of 2012, they were restructured and reclassified as employees. This lawsuit was filed in, I believe, April of 2012. All right, thank you very much. Thank you both for your arguments. We'll reserve decision.